## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CHARLIZE MARIE BAKER,** | § | |
| | § | |
| *Complainant* | § | |
| | § | **CASE NO.** _____ |
| **V.** | § | |
| | § | |
| **AETNA LIFE INSURANCE CO. &** | § | **JURY TRIAL REQUESTED** |
| **L-3 COMMUNICATIONS CORP.** | § | |
| | § | |
| *Defendant* | § | |

## COMPLAINT

**COMES NOW** Complainant, Charlize Marie Baker, and files this Complaint against the Defendants AETNA LIFE INSURANCE COMPANY and L-3 COMMUNICATIONS CORPORATION on the following grounds:

## I.

## INTRODUCTION

This is an action for discrimination on the basis of Gender Identity in violation of 42 U.S.C. § 18116(a) (Section 1557 of the Patient Protection and Affordable Care Act); an action for Discrimination based on gender in violation of 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991); and an action for wrongful denial of benefits by an ERISA plan in violation of 29 U.S.C. § 1002(2)(A). Complainant further requests that the Court enjoin the Defendants from continuing to engage in the discriminatory practices described herein and order affirmative action to change their discriminatory policies pursuant to 42 U.S.C. § 2000e(g)(1).

## II.

## JURISDICTION

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4). Jurisdiction is further conferred on this court by ERISA, 29 U.S.C. § 1132(e)(1) and (f), which give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan.

Defendant L-3 Communications Corp. is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

Defendant Aetna Life Insurance Company is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b). Moreover, Defendant Aetna is a liable to Complainant as her "employer" (an agent of the employer) with respect to this cause of action pursuant to EEOC Compliance Manual, Section 2, Section III.B.2, which states that:

> An entity that is an agent of a covered entity is liable for the discriminatory actions it takes on behalf of the covered entity. For example, an insurance company that provides discriminatory benefits to the employees of a law firm may be liable under the EEO statutes as the law firm's agent.[1]

This Court has personal jurisdiction over Defendant Aetna Life Insurance Company (hereinafter referred to as Aetna). Defendant Aetna is a for-profit corporation organized under the laws of the State of Delaware. At all times relevant, Defendant Aetna regularly did business throughout the State of Texas.

This Court has personal jurisdiction over L-3 Communications Corp. (hereinafter referred to as L-3). Defendant L-3 is a for-profit corporation organized under the laws of

---

[1] Citing *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir. 1982)

**COMPLAINT**                                                                                             2

the State of Texas. At all times relevant, Defendant L-3 operated its business in the State of Texas and in the Northern District, Sherman Division.

## III.

## VENUE

Venue in the Northern District of Texas is proper pursuant to 28 U.S.C. § 1391(b), (c) & (d). Defendants operate their businesses within the Northern District of Texas. Defendant L-3 has a corporate office in the Northern District of Texas. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. § 1391(b) & (c).

## IV.

## THE PARTIES

The Complainant is a female residing in the city of Allen, Collin County, Texas. She is an employee of Defendant L-3 at their place of business in Greenville, Texas, and a covered person under a policy for health and disability benefits administered by Defendant Aetna.

Defendant Aetna is a corporation doing business in the Northern District of the Texas, Dallas Division, and is subject to the jurisdiction of this Court. Defendant Aetna may be served with summons and process by service upon its registered agent CT Corporations System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Defendant L-3 is a corporation doing business in the Northern District of Texas and is subject to the jurisdiction of this Court. Defendant L-3 may be served with summons and process by service upon its registered agent CT Corporations System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## V.

## FACTS

Defendant Aetna is the administrator of a health and disability benefits plan offered to employees of Defendant L-3.  The plan is a defined contribution, individual account, employee pension benefit plan covered by ERISA. ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

Complainant is an employee in good standing with Defendant L-3, who has recently received a promotion, and is a participant in the ERISA plan administered by Defendant Aetna which is offered to employees of Defendant L-3.

Complainant is a woman who was assigned a gender designation of "male" when born, but who is in the process of correcting that error of gender designation through gender confirmation (sometimes referred to as sex or gender reassignment) medical procedures.

Complainant has long suffered from what she identified as depression, which she eventually came to realize was the result of attempting to conform to the cultural norms of her "biologically assigned" gender (male).  She has a well-documented history of suffering from Gender Dysphoria. [2]

She began seeking treatment for this condition approximately 10 years ago and began the process of gender transition under the guidance of healthcare professionals in 2011 when she began to pursue a commonly prescribed and medically necessary process

---

[2] Gender Dysphoria was formerly referred to as Gender Identity Disorder or "GID" and before that referred to at times as "transsexualism" etc.  All of these refer to the same disorder, condition, "illness" or "disease."

of treating Gender Dysphoria by initiating hormone replacement therapy. This treatment is designated as a medically necessary procedure for the treatment of Gender Dysphoria.[3]

On November 12, 2014, Complainant legally changed her name from Daryl Thomas Baker to Charlize Marie Baker in Collin County, Texas. Moreover, Complainant officially changed her gender designation on all government issued documents, including the Department of Vital Statistics, Texas Department of Transportation, and the Social Security Administration.

In March of 2015, Complainant scheduled a medical procedure to treat her Gender Dysphoria by obtaining breast implants. Prior to doing so, she was seen by a healthcare professional who evaluated her and determined that obtaining breast implants was medically necessary.

Complainant provided Defendants with a recommendation from Felecia Porter, M.S., L.P.C. – a professional with nearly 20 years of experience treating Gender Dysphoria and Complainant's treating healthcare professional--stating that Complainant's breast implant surgery was "medically necessary" and "considered reconstructive and necessary" rather than cosmetic or elective in nature. Defendant Aetna was also provided with a letter from her surgeon, Scott W. Harris, M.D., who wrote that "Transgender Surgery, as you know, has become a functional indication for surgery." But Defendant Aetna disregarded these opinions regarding medical necessity in favor of blanket, discriminatory policies.

"Top surgery" is clearly a medically necessary component of the treatment of Gender Dysphoria but it is not covered under the plan for individuals with birth gender

---

[3] See, World Professional Association for Transgender Health, Standards of Care, V. 7 as amended in 2011; See also American Medical Association, Resolution 122: "internationally accepted Standards of Care for providing medical treatment for people with GID, including mental health care, hormone therapy and sex reassignment surgery."

**COMPLAINT**

designation of male.   It is, however, covered for individuals with the birth gender designation of female (i.e., breast implants are not covered for a Male-to-Female gender confirmation, but a mastectomy is covered for Female-to-Male gender confirmations).

Put differently, Defendant Aetna's policy denies benefits to Complainant solely because of her birth gender, and for no other reason.

At the time of Complainant's March surgery to obtain breast implants, she applied for short-term disability benefits under an ERISA plan for benefits offered through her employer, Defendant L-3 and administered by Defendant AETNA.

Complainant's application for short-term disability benefits was supported by letters from two healthcare professionals who indicated that the surgical procedure was medically necessary for the treatment of Gender Dysphoria.  The letter from her surgeon indicated that it would be medically necessary for Complainant to take time off or work to recover, followed by a period of light duty.

In spite of the thorough documentation of the medical necessity of her surgery and recovery, Defendant Aetna denied Complainant short-term disability benefits on the stated grounds that the basis of her need for short-term disability benefits (surgical treatment of Gender Dysphoria) was not for treatment of a "illness" (defined in the Policy as "[a] pathological condition of the body that presents a group of clinical signs and symptoms and laboratory findings peculiar to it and that sets the condition apart as an abnormal entity differing from other normal or pathological body states").

The basis of Defendant Aetna's denial–that surgery to treat Gender Dysphoria does not qualify as treatment of an "illness"--is nothing less than a willful refusal to

accept globally accepted medical opinion of which they are clearly aware: The American Medical Association has resolved that

> Gender Identity Disorder (GID) is a serious medical condition recognized as such in both the Diagnostic and Statistical Manual of Mental Disorders (4th 5 Ed., Text Revision) (DSM-IV-TR) and the International Classification of Diseases (10th Revision),and is characterized in the DSM-IV-TR as a persistent discomfort with one's assigned sex and with one's primary and secondary sex characteristics, which causes intense emotional pain and suffering.[4]

On information and belief, Defendant Aetna was well aware of this at the time it (a) drafted it's discriminatory policy which denies Complainant coverage for medically necessary treatment of Gender Dysphoria; and (b) denied her short-term disability benefits on the grounds that treatment of Gender Dysphoria is not treatment of an "illness."

Complainant meticulously followed the prescribed appeals process delineated in the Plan and received a denial of her appeal from Defendant Aetna on July 10, 2015.

Defendants are both Government contractors and as such are prohibited from discrimination on the basis of gender identity. On July 21, 2014, President Obama signed Executive Order 13672, amending Executive Order 11246, to prohibit federal contractors and subcontractors such as Defendants from discriminating on the basis of gender identity.

Defendant L-3--which has consistently demonstrated a desire to accommodate the Complainant's, rights, health and well-being as an individual throughout Complainant's gender confirmation process --depends on Defendant Aetna to provide its employees with

---

[4] American Medical Association House of Delegates, Resolution 122.

**COMPLAINT**

health and disability coverage that comports to the laws and Constitution of the United States of America.[5]

Defendant Aetna has wholly failed in that regard, creating policies and procedures that discriminate against Complainant and other similarly situated individuals on the basis of their gender or gender identity. Specifically, denying health and disability benefits to "biological males" in the process of confirming their female identity that they do not deny to "biological females" in the process of confirming their identity as males: to wit; "biological females" who require the medically necessary procedure to remove "female" breasts are covered under the subject discriminatory policy while "biological males" who require the medically necessary addition of "female" breasts are denied coverage for that medically necessary procedure on the absurd grounds that breast augmentation is "cosmetic" in nature;

Defendant Aetna's policy is abhorrent, insupportable by any legitimate source in the medical community, completely contrary to globally accepted standard of care for the treatment of Gender Dysphoria, arbitrary (including within its own policy) and clearly motivated by an intentional and /or maliciously ignorant desire to deny benefits to its plan enrollees on the basis of gender and gender identity.

Not only does Defendant Aetna's discriminatory policy deny a benefit to Complainant in the treatment of Gender Dysphoria on the basis of her gender, it also wrongfully and arbitrarily denies her short-term disability for the treatment of Gender

---

[5] Plaintiff wishes to make clear that the discriminatory act she alleges against Defendant L-3 is essentially limited to the fact that their agent and plan administrator Defendant Aetna's gender reassignment healthcare policy is discriminatory and Aetna's administration of short-term disability benefits discriminates against her on the basis of her Gender Identity.

**COMPLAINT**                                                                                           8

Dysphoria and therefore discriminates against Complainant on the basis of her Gender Identity.

Throughout her approximately seven-year tenure as an employee of Defendant L-3, Complainant has been an exemplary employee, received promotions and performed her duties in a satisfactory or above manner.

## VI.

## AETNA POLICY

Defendant Aetna's policy is facially discriminatory against transgender persons such as Complainant in that it provides coverage for many of the medical procedures that are considered to be medically necessary to treat Gender Dysphoria, but expressly labels other medically necessary treatments as cosmetic, and not covered by the policy. Not only does the medical community recognize some of Aetna's "cosmetic" surgeries as medically necessary and thus non-cosmetic, the courts have also commented on the necessity of such treatments. Aetna's "Gender Reassignment Surgery" policy thus defies the conclusions of legal and medical standards that these surgeries are necessary, including but not limited to: hair removal/transplantation, voice therapy/lessons/surgeries, and facial bone reduction/enhancements.

Moreover, Defendant Aetna's policy is discriminatory in that it refuses to accept Gender Dysphoria as an "illness" or "disease" in the application of its disability benefits, having denied short-term disability benefits related to medically necessary treatment of Gender Dysphoria, however it selectively recognizes it as a medically treatable condition in other parts of its policies.

COMPLAINT                                                                              9

Incredibly, Defendant Aetna's policies regarding access to medical treatment of Gender Dysphoria generally demonstrate an awareness of the globally accepted standards of care, except when they don't (indicating that the discrimination complained of herein is not accidental, but intentional).

Moreover, in spite of the fact that it is well settled that medical treatment of Gender Dysphoria cannot be fairly and adequately dispensed according to a blanket policy with disregard for an individual's healthcare professionals' opinions of medical necessity, Defendant Aetna disregarded the opinions of Complainant's healthcare professionals completely, instead relying on blanket policy to deny her benefits.

Sadly, as will be discussed below, Complainant would arguably have better access to healthcare for treatment of Gender Dysphoria if she was a convicted felon bringing a claim under the Eighth Amendment than she does as a free citizen and highly respected employee of a government contractor subject to the discriminatory policies of Defendant Aetna.

## VII.

## GENDER DYSPHORIA STANDARD OF CARE & MEDICAL NECESSITY

Gender Dysphoria is an "illness" or "disease" with a globally accepted standard of care.[6] Standards for the treatment of Gender Dysphoria have been established by the World Professional Association for Transgender Health (WPATH). These standards firmly establish that there is no material difference between how a Male-to-Female transgender

---

[6] Coleman, et al. "Standards of Care for the Health of Transsexual, Transgender and Gender-Nonconforming People, Version 7." *International Journal of Transgenderism*; 13: 165-232, 2011.

person requires a physical confirmation and how a Female-to-Male transgender person

requires a physical confirmation of their gender identity.

These standards have been expressly adopted by the American Medical

Association.[7]   In adopting the WPATH standards of care, the AMA resolved as follows:

> Whereas, an established body of medical research demonstrates the effectiveness
> and medical necessity of mental health care, hormone therapy and sex
> reassignment surgery as forms of therapeutic treatment for many people
> diagnosed with GID;
>
> Whereas, Health experts in GID, including WPATH, have rejected the myth that
> such treatments are "cosmetic" or "experimental" and have recognized that these
> treatments can provide safe and effective treatment for a serious health condition;
> and
>
> Whereas, Physicians treating persons with GID must be able to provide the
> correct treatment necessary for a patient in order to achieve genuine and lasting
> comfort with his or her gender, based on the person's individual needs and
> medical history;
>
> Whereas, The AMA opposes limitations placed on patient care by third-party
> payers when such care is based upon sound scientific evidence and sound medical
> opinion. (Emphasis added)

As the WPATH and AMA standards clearly indicate, with respect to many of the

medically reasonable treatments available to individuals who have Gender Dysphoria, the

accepted standards of care leave it to the patients' treating healthcare professionals to

determine which of the treatments are medically necessary with respect to that individual

patient.

As will be discussed below, our courts have consistently held that policies that fail

to recognize the individual nature of treatment for Gender Dysphoria but rely on a

blanket policy are unconstitutional in an Eighth Amendment context.  This once again

raises the issue that Complainant would arguably have better access to healthcare for

---

[7] American Medical Association, Resolution 122.

**COMPLAINT**

treatment of Gender Dysphoria if she was a convicted felon than she does as an employee

of Defendant L-3 subject to the discriminatory policies of Defendant Aetna.

## VIII.

## PRIOR ADJUDICATION

In addition to being recognized as a serious medical condition by the AMA, Gender

Dysphoria has been adjudicated to be a "disease" or an "illness" for purposes of judicial

analysis on numerous occasions:  it is a treatable medical condition.

> Seven of the U.S. Courts of Appeals that have considered the question have
> concluded that severe GID or transsexualism constitutes a "serious medical need"
> for purposes of the Eighth Amendment. See *De'lonta v. Angelone*, 330 F.3d 630,
> 634 (4th Cir. 2003); *Allard v. Gomez*, 9 Fed. Appx. 793, 794 (9th Cir. 2001);
> *Cuoco v. Moritsugu, supra*; *Brown v. Zavaras*, 63 F.3d 967, 970(10th Cir. 1995);
> *Phillips v. Mich. Dept. of Corr.*, 932 F.2d 969 (6th Cir. 1991), affg. 731 F. Supp.
> 792 (W.D.Mich. 1990); *White v. Farrier, supra*; *Meriwether v. Faulkner*, 821 F.2d
> 408, 411-413 (7th Cir. 1987); see also *Maggert v. Hanks*, 131 F.3d 670, 671 (7th
> Cir. 1997) (describing gender dysphoria as a "profound psychiatric disorder").

> No U.S. Court of Appeals has held otherwise.

> The U.S. Supreme Court has also treated [Gender Dysphoria] as a serious medical
> condition, relying on its listing in the DSMIII and the American Medical
> Association's Encyclopedia of Medicine (1989). See *Farmer v. Brennan*, 511 U.S.
> 825, 829, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

*O'Donnabhain v. Commissioner*, 134 T.C. 34, 61-62; 2010 U.S. Tax Ct.

Moreover, the gender confirmation or "reassignment" process, including

hormonal therapies and surgeries to change the appearance of an individual with Gender

Dysphoria have been adjudicated to be medically necessary and not cosmetic in any way,

shape or form:

> The evidence amply supports the conclusions that petitioner suffered from severe
> GID, that GID is a well-recognized and serious mental disorder, and that hormone
> therapy and sex reassignment surgery are considered appropriate and effective
> treatments for GID by psychiatrists and other mental health professionals who are
> knowledgeable concerning the condition hormone therapy and sex reassignment

surgery were essential elements of a widely accepted treatment protocol for severe GID. The expert testimony also establishes that given (1) the risks, pain, and extensive rehabilitation associated with sex reassignment surgery, (2) the stigma encountered by persons who change their gender role and appearance in society, and (3) the expert-backed but commonsense point that the desire of a genetic male to have his genitals removed requires an explanation beyond mere dissatisfaction with appearance (such as GID or psychosis), petitioner would not have undergone hormone therapy and sex reassignment surgery except in an effort to alleviate the distress and suffering attendant to GID.hormone therapy and sex reassignment surgery treated disease within the meaning of section 213 and were therefore not cosmetic surgery.

*O'Donnabhain*, 134 T.C. at 96-97.

It is also important to note that there is a wealth of authority that addresses the issue of the manner in which blanket policies regarding the manner in which healthcare is dispensed to individuals with Gender Dysphoria (and which disregard the determinations of medical necessity by treating healthcare professionals) amount to violations of constitutional rights.

Much of the prior adjudication on the issue of the medical necessity of medical treatment for Gender Dysphoria arises under the Eighth Amendment.  In *De'Lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013), the Fourth Circuit held that a prisoner could proceed on a deliberate indifference claim based on the prison's refusal to "evaluate [the inmate] for surgery, consistent with the Standards of Care."

In *Soneeya v. Spencer*, 851 F. Supp. 2d 228 (D. Mass. 2012), a District of Massachusetts judge similarly found that a prison policy that "removes the decision of whether sex reassignment surgery is medically indicated for any individual inmate from the considered judgment of that inmate's medical providers" violated Eighth Amendment guarantees.

In *Allard v. Gomez*, 9 Fed. Appx. 793, 795 (9th Cir. 2001) the Court held that denial of medical treatment for Gender Dysphoria as a violation of a prisoner's rights when it was denied "as a result of a blanket rule" rather than individual medical evaluation of the complainant.

In *Houston v. Trella*, No. 04-1393, 2006 U.S. Dist. LEXIS 68484, at *27 (D.N.J. Sept. 22, 2006) the court found grounds for a constitutional violation where a prison doctor's decision not to provide hormone therapy to prisoner with Gender Dysphoria was based on policy rather than individual medical evaluation.

In *Barrett v. Coplan*, 292 F. Supp. 2d 281, 286 (D.N.H. 2003) the court held that "A blanket policy that prohibits a prison's medical staff from making a medical determination of an individual inmate's medical needs and prescribing and providing adequate care to treat those needs violates the Eighth Amendment." And in *Brooks v. Berg*, 270 F. Supp. 2d 302, 312 (N.D.N.Y. 2003), vacated in part by *Brooks v. Berg*, 289 F. Supp. 2d 286 (N.D.N.Y. 2003) the court held that "[p]rison officials cannot deny transsexual inmates all medical treatment simply by referring to a prison policy which makes a seemingly arbitrary distinction between inmates who were and were not diagnosed with GID prior to incarceration."

IX.

## COUNT ONE
### DISCRIMINATION BASED ON GENDER IDENTITY IN VIOLATION OF THE PATIENT PROTECTION & AFFORDABLE CARE ACT SECTION 1557

Complainant Charlize Marie Baker brings this cause of action against Defendant Aetna for discrimination based on gender identity in violation of the Patient Protection and Affordable Care Act, Section 1557.

Defendant Aetna, as agent of Defendant L-3, has denied Complainant healthcare benefits based solely on her Gender Identity. As stated previously, Defendant L-3 is vicariously liable for the discriminatory acts of its agent.  Defendants have acted in violation of the anti-discrimination provisions of Section 1557 of the Patient Protection and Affordable Care Act.

Executive Order 13672, amending Executive Order 11246, expressly prohibits federal contractors and subcontractors such as Defendants from discriminating on the basis of gender identity, thus this discrimination against Complainant—a Transgender Woman--on the basis of her gender identity in restricting her access to or providing benefits for what are universally accepted procedures which are medically necessary to treat Gender Dysphoria is a clear violation of Section 1557.

Section 1557 of the ACA states that:

(a) In general Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . . The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection. (Emphasis Added).[8]

Accordingly, Defendants -- who are both government contractors and therefore receive Federal funds may not discriminate against Complainant on the basis of "sex," as

---

[8] Title VI regulations define the term "Federal financial assistance" broadly to include: (1) grants and loans of Federal funds, (2) the grant or donation of Federal property and interests in property, (3) the detail of Federal personnel, (4) the sale and lease of, and permission to use Federal property or interest in such property without consideration or at a nominal consideration, and (5) any Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance. 45 C.F.R. § 80.13(f).

**COMPLAINT**

15

Title IX prohibits discrimination on this "ground" – have violated Section 1557 of the ACA, which gives rise to a private right of remedy (i.e. "[t]he enforcement mechanisms provided for and available under such title VI, title IX...shall apply for purposes of violations of this subsection.")

Complainant alleges that Defendants discriminated against her based upon her gender identity or transgender status with malice, deliberate disregard for, or deliberate reckless indifference to Complainant's protected Civil Rights in direct violation of the Patient Protection and Affordable Care Act, Section 1557.

Section 1557 references and incorporates four different civil rights statutes: Title VI, which prohibits discrimination on the basis of race, color, and national origin; Title IX, which prohibits discrimination on the basis of sex; the Age Discrimination Act, which prohibits discrimination on the basis of age; and section 504 of the Rehabilitation Act, which prohibits discrimination on the basis of disability. See 42 U.S.C. § 18116. Each provides a remedy to an aggrieved Complainant under a Civil Rights model.

Though a private right of remedy is certainly implied in Section 1557, the Department of Health and Human Services Office of Civil Rights (OCR) published the "Notice of Proposed Rulemaking on Nondiscrimination in Health Programs and Activities, (the "Nondiscrimination Rule"), proposing an amendment to Section 1557 that would eliminate any ambiguity and expressly allow for a private right of action for violations of Section 1557 with Civil Rights remedies such as those afforded in the four Civil Rights statutes cited in Section 1557.

Comments on the proposed amendment to Section 1557 were due on or before

November 9, 2015 and on November 8, 2015, the OCR received Healthcare and Equality

Experts' Comments on 1557 NPRM (RIN 0945–AA02), which states:

> Because the text of Section 1557 is ambiguous as to the legal standards
> required for a private cause of action, courts have already divided on this
> question. Compare *Se. Pennsylvania Transp. Auth. v. Gilead Sciences*, Inc., No.
> CIV.A. 14-6978, 2015 WL 1963588 (E.D. Pa.May 4, 2015) (holding that
> disparate standards and scope apply to different protected classes), with *Rumble v.
> Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415, at *10-
> 12 (D. Minn. Mar. 16, 2015) (holding that Section 1557 requires uniform
> standards and scope across protected classes). Under such circumstances, HHS
> should provide the courts and the public with guidance. We strongly recommend
> that HHS interpret Section 1557 liberally to provide uniform
> enforcement mechanisms and legal standards across race, sex, disability, and age
> discrimination.  First, HHS should specify that the full range of enforcement
> mechanisms—that is, agency enforcement, administrative complaints, and private
> rights of action—are available for violations of Section 1557.

As it appears that amendments to Section 1557 made by the Secretary to

expressly provide for a private right of remedies are imminent as of the time of the filing

of this complaint, Complainant pleads that she is entitled to any such relief, rights or

remedies to which she will be entitled pursuant to the adoption of such amendments by

the Secretary.[9]

## X.

## COUNT TWO

### ERISA VIOLATION

Complainant Charlize Marie Baker brings this cause of action against Defendant

Aetna pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C.

§1001, et seq. ("ERISA"). Complainant seeks to recover medical benefits pursuant to the

---

[9] Section 1557 contains an express Congressional delegation to HHS to resolve any ambiguities. 42 U.S.C.A.
§ 18116 (c) ("The Secretary may promulgate regulations to implement this section.").

terms of a medical benefits plan entitled "L-3 Communications Corporation Short Term

Disability and Long Term Disability Insurance Plan" (the "Plan") and under 29 U.S.C.

§1132(a)(1)(B). Complainant seeks these remedies, plus prejudgment interest, post-

judgment interest, Complainants' costs and attorney fees, pursuant to 29 U.S.C. §

1132(e)(1) and (f).

The Plan is an employee welfare benefit plan specifically covered under ERISA,

29 U.S.C. § 1002(2)(A), and an "employee benefit plan" as defined by 29 U.S.C. §

1002(3), under which Complainant is a "beneficiary," as defined by 29 U.S.C. § 1002(8).

At all times material herein, Defendant Aetna is the administrator of the Plan,

within the meaning of ERISA, 29 U.S.C. § 1002(16)(A).

At all times material herein, Defendant Aetna is the claims administrator of the

Plan, making and/or participating in making all benefits decisions under the Plan.

Complainant submitted a claim for short-term disability benefits under the plan to

Defendant Aetna (Claim # 11473804).

By letter dated July 15, 2015, Defendant Aetna informed Complainant of its final

decision upholding denial of short-term disability benefits. Defendant Aetna's decision

denying medical benefits for the expenses described herein above, is erroneous, arbitrary,

capricious, and an abuse of discretion.

Complainant has completed all steps required prior to the filing of this complaint

under the Plan and ERISA, including an internal appeal of the denial of short-term

disability benefits pursuant to 29 U.S.C. §1133.

29 U.S.C. § 1132(a)(1)(B) authorizes Complainant to recover benefits due under the terms of the Plan, to enforce Complainant's rights under the terms of the Plan, and/or to clarify Complainant's right to future benefits under the terms of the Plan.

As a result of the denial of Complainant's medical benefits under the Plan, Complainant has incurred attorney fees and costs, pursuant to 29 U.S.C. § 1132(g)(1).

## The ERISA / ACA DISCONNECT

Although Complainant notes that the denial of short-term disability benefits was a violation of her rights under ERISA due to the fact that Defendant Aetna wrongfully failed to recognize Gender Dysphoria as a medically treatable "illness," she pleads in the alternative for a good faith extension of existing law and asks the Court to find that this denial was also an act of discrimination based on her Gender Identity.

Complainant notes that she is protected from discrimination based on Gender Identity in the administration of healthcare benefits under the Patient Protection and Affordable Care Act, Section 1557, but does not enjoy similar protections under ERISA which does not include any express prohibitions against discrimination on the basis of Gender Identity.

Insofar as it is virtually impossible for an ERISA plan offered by an employer or administered by a health insurance company that is a governmental contractor to exist that is not also subject to ACA Section 1557, Complainant makes this pleading for a good faith extension of existing law that the discrimination by Defendants based on her Gender Identity is also discrimination in violation of ERISA in this context and that ERISA must be read to include the prohibition of discrimination based on Gender Identity.

## XI.

## **COUNT THREE**

## **EMPLOYMENT DISCRIMINATION BASED ON SEX/GENDER IN VIOLATIONS OF TITLE VII**

Complainant Charlize Marie Baker brings this cause of action for violations of her Civil Rights under Title VII of the Civil Rights Act of 1964.

Defendants Aetna and L-3 have engaged in intentional gender discrimination in the terms and conditions of the Complainant's employment by denying her a medically necessary procedure based solely on her gender in that Defendant Aetna's policy provides for "top surgery" (i.e. mastectomy) for individuals with a birth gender designation of female as they transition to males while denying "top surgery" (i.e. breast implants) for individuals with a birth gender identity of male transitioning to female.

Defendants' conduct constitutes a deliberate and intentional violation of Title VII.

On or about November 9, 2015, the Complainant timely filed Charges of Discrimination against Defendant Aetna and Defendant L-3 alleging gender discrimination with the Equal Employment Opportunity Commission ("EEOC"). (True and accurate copies of EEOC Charges of Discrimination # 450-2016-00471 & # 450-2016-00473, are attached hereto as *Exhibits A & B*).

The Complainant has satisfied all statutory prerequisites for filing this action.

On or about November 9, 2015, the Complainant received her "Dismissal and Notice of Rights" letters as to each Defendant from the EEOC for her Charges of Discrimination. (True and accurate copies of the EEOC "Dismissal and Notice of Rights" letter for EEOC Charge of Discrimination # 450-2016-00471 & # 450-2016-00473, are attached hereto as *Exhibits C & D*).

The Complainant has filed this action under Title VII within ninety (90) days after receipt of her "Notice of Right to Sue" letter from the EEOC.

Defendants' intentional and deliberate discriminatory conduct, in violation of Title VII, has caused the Complainant to suffer a loss of pay, benefits, and prestige.

Defendants' intentional and deliberate discriminatory actions have caused Complainant to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a(a)(1).

Defendants have engaged in discriminatory practices with intent, deliberation, malice and reckless indifference to the Complainant's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a(a)(1).

## DISCRIMINATION BASED ON GENDER IDENTITY

Complainant further avers that the actions of Defendants are discrimination based on her gender identity.  Although discrimination based on Gender Identity is still permitted under Title VII, both Defendants are government contractors, required to comply with Executive Order 13672 (amending Executive Order 11246) which prohibits discrimination based on Gender Identity.  Plaintiff pleads that in addition to being discriminated against on the basis of gender, discrimination based on Gender Identity by these Defendants is also in violation of Title VII.

### PRAYER FOR RELIEF

Wherefore, premises considered, Complainant prays for a judgment as follows:

1.    That the Court order Defendants to compensate her for medically necessary procedures for which she was wrongfully denied coverage under Defendants' benefits plan;

**COMPLAINT**                                                                 21

2. That the Court grant full compensation for short term disability coverage under the Defendants' benefits plan;

3. That the Court grant Complainant compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

4. That the Court grant Complainant punitive damages for Defendants' malicious and recklessly indifferent conduct;

5. That the Court grant Complainant all employment, health and short-term disability benefits she would have enjoyed had she not been discriminated against;

6. That the Court grant Complainant expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and/or 42 U.S.C. § 1988;

7. That the Court grant Complainant a jury trial;

8. That the Court grant Complainant all other relief the Court deems just and proper;

9. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct;

10. That the Court order statutory penalties in an amount to be determined at trial, pursuant to 29 U.S.C. § 1132(c)(1), 29 U.S.C. § 1024(b)(4), and 29 C.F.R. § 2575.502c-1;

11. That the Court find that Complainant is entitled to relief under ERISA as a result of a wrongful denial of benefits based on Defendants' failure to recognize Gender Dysphoria as an "illness" AND that she is entitled to relief under ERISA as a result of discrimination based on Gender Identity;

12.  That the Court order that Complainant be awarded private remedies for violations of her Civil Rights with respect to Defendants' violation of Section 1557 or the Patient Protection and Affordable Care Act; and

13.  That the Court enjoin the Defendants from continuing to engage in the discriminatory practices described herein and order affirmative action to change their discriminatory policies pursuant to 42 U.S.C. § 2000e(g)(1).

Respectfully submitted,

**HINDMAN/BYNUM, P.C.**

By:  /S/ Michael J. Hindman
     Michael Hindman
     State Bar No. 24000267
     Michael.hindman@hindmanbynum.com

     Kasey Krummel
     State Bar No. 24097957
     Kasey.krummel@hindmanbynum.com

5005 Greenville Ave., Suite 200
Dallas, Texas 75201
Phone No.    (214) 941-4611
Fax No.      (469)906-2340

**ATTORNEYS FOR COMPLAINANT**

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Charlize M. Baker<br>505 Exchange Parkway<br>Apt 6202<br>Allen, TX 75002 | From: | Dallas District Office<br>207 S. Houston St.<br>3rd Floor<br>Dallas, TX 75202 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 450-2016-00471 | Karen C. Heard,<br>Investigator | (214) 253-2873 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| | |
|---|---|
| [ ] | More than 180 days have passed since the filing of this charge. |
| [X] | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| [ ] | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| [ ] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
| [ ] | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Karen C. Heard*                      11/9/15

Enclosures(s)

**Belinda F. McCallister,**
**Acting District Director**

*(Date Mailed)*

cc:
| | |
|---|---|
| Cherene Cotter<br>Human Resources<br>AETNA INSURANCE COMPANY<br>151 Farmington Ave.<br>Hartford, CT 06156 | Kasey Krummel<br>5005 Greenville Ave<br>Suite 200<br>Dallas, TX 75206 |

**EXHIBIT**

**A**

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Charlize M. Baker**<br>**505 Exchange Parkway**<br>**Apt 6202**<br>**Allen, TX 75002** | From: **Dallas District Office**<br>**207 S. Houston St.**<br>**3rd Floor**<br>**Dallas, TX 75202** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **450-2016-00473** | **Karen C. Heard,**<br>**Investigator** | **(214) 253-2873** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Belinda F. McCallister,**
**Acting District Director**

*11/9/15*
*(Date Mailed)*

cc: **Vikki Teague**
**Human Resources**
**L3 COMMUNICATIONS**
**10001 Jack Finney Blvd**
**Greenville, TX 75402**

**Kasey Krummel**
**5005 Greenville Ave #200**
**Dallas, TX 75206**

EXHIBIT
B

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 450-2016-00471 |

| **Texas Workforce Commission Civil Rights Division** | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Charlize M. Baker** | (972) 955-8133 | 05-29-1963 |

| Street Address | City, State and ZIP Code |
|---|---|
| **505 Exchange Parkway, Apt 6202, Allen, TX 75002** | NOV 09 2015 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

OPPORTUNITY COMMISSION

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **AETNA INSURANCE COMPANY** | **500 or More** | **(800) 345-5839** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P O Box 981106, El Paso, TX 79998** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest / Latest |

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

Earliest **03-16-2015**   Latest **03-16-2015**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**PERSONAL HARM:**
In March 2015 I was denied coverage for short term disability and for a mammoplasty.

**RESPONDENT'S REASON FOR ADVERSE ACTION:**
It is considered cosmetic surgery which is not covered by insurance.

**DISCRIMINATION STATEMENT:**
I believe I have been discriminated against because of my sex, female in violation of Title VII of the Civil Rights Act of 1964, as amended

**EXHIBIT**

**C**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Nov 09, 2015**  *(signature)* Charlize M. Baker | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)  11/9/15 |
| Date   Charging Party Signature | |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 450-2016-00473 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Charlize M. Baker** | **(972) 955-8133** | **05-29-1963** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **505 Exchange Parkway, Apt 6202, Allen, TX 75002** | NOV 0 9 2015 | |

EQUAL       ENT
       DISTRICT

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **L3 COMMUNICATIONS** | **500 or More** | **(903) 457-4109** |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| **10001 Jack Finney Blvd, Greenville, TX 75402** | | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| | | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest: **03-16-2015**   Latest: **03-16-2015**<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**PERSONAL HARM:**
In March 2015 I was denied coverage for short term disability and for a mammoplasty.

**RESPONDENT'S REASON FOR ADVERSE ACTION:**
It is considered cosmetic surgery which is not covered by insurance.

**DISCRIMINATION STATEMENT:**
I believe I have been discriminated against because of my sex, female in violation of Title VII of the Civil Rights Act of 1964, as amended

**EXHIBIT**
D

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Nov 09, 2015        *Charlize M. Baker*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)   11/9/15   *Karen C. Haag* |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle your charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against anyone, or for a union to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.