IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLIZE MARIE BAKER, §
 §
        Plaintiff, §
 § Civil Action No. 3:15-CV-3679-D
VS. §
 §
AETNA LIFE INSURANCE CO. & §
L-3 COMMUNICATIONS CORP., §
 §
        Defendant. §

MEMORANDUM OPINION
AND ORDER

Plaintiff Charlize Marie Baker ("Baker")—who transitioned from the male to female gender to address her Gender Dysphoria—sued defendants Aetna Life Insurance Company ("Aetna") and L-3 Communications Integrated Systems, LP ("L-3") to recover, *inter alia*, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for the denial of coverage for her breast augmentation surgery, based solely on her male birth gender. Following two decisions—*Baker v. Aetna Life Ins. Co.*, 228 F.Supp.3d 764 (N.D. Tex. 2017) ("*Baker I*"), and *Baker v. Aetna Life Ins. Co.*, 260 F.Supp.3d 694 (N.D. Tex. 2017) ("*Baker II*"), *appeal dism'd sub nom. Baker v. L-3 Commc'ns Corp.*, 2017 WL 6021831 (5th Cir. July 6, 2017)—only Baker's Title VII claim against L-3 remains. L-3 and Baker both move for summary judgment on this claim. For the reasons that follow, the court grants L-3's motion, denies Baker's motion, and dismisses Baker's action against L-3 with

prejudice by judgment filed today.[1]

I

Because this case is the subject of the memorandum opinions and orders in *Baker I* and *Baker II*, the court will recount only the background facts and procedural history that are pertinent to this decision.

Baker is an employee of L-3 and a participant in the company's ERISA[2]-qualified health benefits plan ("Health Plan") and ERISA-qualified short-term disability benefits plan ("STD Plan"). Aetna is the third-party administrator of the Health Plan and the claim fiduciary and administrator of the STD Plan.

Baker suffers from Gender Dysphoria (formerly known as Gender Identity Disorder). In 2011 she began the process of gender transition from male to female. As part of this transition, she received hormone replacement therapy—which was covered under the Health Plan—and developed size B-C female breasts as a result. In 2015 Baker underwent breast augmentation surgery (i.e., implant surgery), for which she sought benefits from Aetna under the STD Plan for her post-surgery recovery. Aetna denied Baker's STD claim on the ground that her surgery was not caused by an illness, injury, or pregnancy-related condition, as required for coverage under the STD Plan. Baker did not apply for benefits under the Health

---

[1]On October 3, 2017 L-3 moved for leave to file an answer to Baker's complaint. Because the court is granting L-3's motion for summary judgment and dismissing the action with prejudice, it denies the motion for leave to file an answer without prejudice as moot.

[2]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

- 2 -

Plan.

The Health Plan covers transgender reassignment surgery "when considered medically necessary, as outlined in Aetna's clinical guidelines, and [it] must be pre-certified by Aetna." L-3 9/11/17 App. 383. Aetna's "Gender Reassignment Surgery" policy ("GRS Policy") specifies criteria that must be met for Aetna to find a mastectomy for female-to-male patients to be medically necessary.

Several different provisions of the Health Plan and GRS Policy are relevant to breast surgery for persons transitioning from the male to female gender. With some exceptions,[3] the Health Plan specifically excludes from coverage "plastic surgery, reconstructive surgery, cosmetic surgery or other services and supplies that improve, alter or enhance appearance[.]" L-3 9/11/17 App. 397. A note to the GRS Policy states that "breast augmentation . . . which [has] been used in feminization, [is] considered cosmetic." P. 4/1/16 App. 3. But the Health Plan also provides:

---

[3]The Health Plan makes exceptions for surgeries to

> improve the function of a part of the body that is not a tooth or structure that supports the teeth; improve the function of a part of the body that is malformed as a result of a severe birth defect or a direct result of a disease or surgery performed to treat a disease or injury; repair an injury, as long as the surgery is performed within two Plan Years of the accident or injury.

L-3 9/11/17 App. 397.

> [r]econstructive surgery is considered a covered expense when the procedure is to correct conditions, functional problems or deformities that result from accidental injuries, traumatic scars, disease or congenital anomalies. Surgery necessary to correct deformities due to malignancy is also covered, as is surgery to reconstruct a breast after a medically necessary mastectomy. Mastectomy expenses include reconstruction of the breast on which a mastectomy has been performed; surgery and reconstruction of the other breast to produce a symmetrical appearance; prostheses; and treatment of physical complications of all stages of mastectomy, including lymphedemas. (Surgery performed primarily for cosmetic or beautifying purposes, as determined by Aetna, is not covered.)

L-3 9/11/17 App. 383.

After a series of appeals through Aetna, Baker filed this lawsuit against Aetna and L-3. Following the court's decisions in *Baker I* and *II*, Baker's only remaining claim is for sex/gender discrimination against L-3 under Title VII.[4] Baker alleges that L-3 is liable for the facially discriminatory Health Plan of its agent and plan administrator, Aetna. She contends that, because the Health Plan offers coverage for female-to-male mastectomies but not for male-to-female breast augmentation, it denies her a medically necessary procedure based solely on her sex/gender.[5]

---

[4] In *Baker I* the court dismissed Baker's discrimination claim against Aetna and L-3 under § 1557 of the Patient Protection and Affordable Care Act, *Baker I*, 228 F.Supp.3d at 769; dismissed Baker's alternative ERISA-based discrimination claim, *id.* at 770; dismissed Baker's Title VII claim against Aetna for sex/gender discrimination; and denied L-3's motion to dismiss Baker's Title VII claim, *id.* at 771. In *Baker II* the court dismissed Baker's ERISA claim against Aetna. *Baker II*, 260 F.Supp.3d at 705.

[5] L-3 maintains that, because the court dismissed all claims against Aetna in *Baker I* and *Baker II*, Baker's sex/gender discrimination claim against L-3 fails as a matter of law. It also contends that, because Baker bases her sex/gender discrimination claim on acts of L-

II

L-3 moves for summary judgment on a claim for which Baker will have the burden of proof at trial. Because Baker will have the burden of proof, L-3's burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of Baker's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Baker must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Baker's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Baker's failure to produce proof as to any essential element of the claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where Baker

---

3's agent (Aetna), the dismissal of the sex/gender discrimination claim against Aetna necessarily entails dismissal of this claim against L-3. The court disagrees.

In *Baker I* the court did not reach the question whether the Health Plan was discriminatory based on sex/gender. It dismissed Baker's Title VII discrimination claim against Aetna because she did not plausibly plead that Aetna was her employer. *Baker I*, 228 F.Supp.3d at 770. This holding does not of itself preclude Baker's Title VII claim against L-3.

In *Baker II* the court ruled in favor of Aetna on Baker's ERISA claim. *See Baker II*, 260 F.Supp.3d at 705. The court applied a multi-factor test from *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638 (5th Cir. 1992), and held that Aetna's interpretation of the STD Plan was legally correct and that it did not abuse its discretion in denying Baker's claim. *Id*. at 700. Given that the legal tests for an ERISA claim and a Title VII discrimination claim are not identical, the court's holding on Baker's ERISA claim does not dictate the outcome of her Title VII claim.

fails to meet this burden. *Little*, 37 F.3d at 1077.[6]

Because Baker will have the burden of proof at trial on her Title VII discrimination claim, to be entitled to summary judgment on this claim, she "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex. N.A. v. Prudential Co. Of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that Baker must demonstrate that there are no genuine and material fact disputes and that she is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmy. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marin Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

---

[6]Baker has not filed a response to L-3's motion for summary judgment. Typically, "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2), (3). In this case, because it does not change the outcome, the court will consider Baker's cross-motion for summary judgment to function both as her own motion and as her response to L-3's motion for summary judgment.

III

A

Under Title VII, it is an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). To prevail on her sex/gender discrimination claim, Baker must present direct or circumstantial evidence that her sex/gender was a motivating factor for L-3's adverse action. *See, e.g., Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004)) (addressing Title VII claims for race-based harassment, discrimination based on race, ethnicity, national origin, and religion, and retaliation). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case). "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in [the adverse action], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98.

B

1

Baker bases her Title VII claim on the GRS Policy,[7] which she alleges provides on

---

[7]Baker refers to the GRS Policy, and L-3 responds with references to the Health Plan. The parties have not explained the relationship between these two policies. For the purpose

its face a specific benefit to males but not to females. Because the conclusion that the Health Plan/GRS Policy is facially discriminatory does not require inference or presumption, the court holds that Baker is relying on direct evidence of discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (policy that is discriminatory on its face is direct evidence of Title VII discrimination) (citing *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978) (policy is facially discriminatory because it requires larger contribution to pension fund from female employees than from male employees)).[8]

2

If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus. *Sandstad*, 309 F.3d at 896 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252-53 (1989)).

---

of understanding the scope of coverage offered to employees, the court will consider the policies together.

[8]L-3 also points to a lack of circumstantial evidence. It maintains that Baker cannot establish a prima facie case of sex/gender discrimination and that it denied coverage for her procedure because she did not show that her breast augmentation was medically necessary to treat her Gender Dysphoria. Baker's complaint does not appear to base her Title VII claim on any theory other than that the Health Plan facially discriminates based on sex/gender. And Baker specifically argues in her cross-motion that "[d]efendant's focus on whether or not there is sufficient evidence to support a finding that breast augmentation was medically necessary for Ms. Baker is irrelevant. The policy, in-and-of-itself, is discriminatory[.]" P. Mot. 9. The court will not therefore address L-3's arguments that focus on whether Baker can succeed based on circumstantial evidence of sex/gender discrimination.

L-3 maintains that Baker has produced no direct evidence of sex discrimination because the Health Plan is not discriminatory on its face. L-3 contends that, regardless of the sex of the transgender patient, the Health Plan offers coverage for medically necessary procedures and excludes from coverage cosmetic procedures. Baker asserts that the GRS Policy's exclusion of breast augmentation from coverage denies male-to-female transgender patients a medically necessary procedure to reconstruct their chests. She posits that, because mastectomies are covered, female-to-male transgender patients receive a benefit based entirely on their status as biological females. The court disagrees.

First, the Health Plan/GRS Policy covers an alternative method for the addition of breasts in male-to-female transgender patients: hormone replacement therapy. Neither party disputes that the Health Plan/GRS Policy covers such a method, and in this specific case, Baker's hormone replacement therapy for the addition of breasts was covered. The court thus understands Baker's claim to be based on the policy's failure to cover a *surgical* method of creating breasts for male-to-female transgender patients, analogous to mastectomies for female-to-male patients. But Baker has provided no authority or argument for why denial of a *surgical* method in particular is discriminatory when hormone replacement therapy is available.

Even so, the Health Plan includes a reconstructive surgery provision with broad language that could plausibly encompass surgical procedures to add breasts in male-to-female transgender patients, provided the surgery is not performed primarily for cosmetic or

beautifying purposes. In relevant part, the provision states: "[r]econstructive surgery is considered a covered expense when the procedure is to correct *conditions*, functional problems or deformities that result from accidental injuries, traumatic scars, *disease* or congenital anomalies." L-3 9/11/17 App. 383 (emphasis added). Neither party disputes that Gender Dysphoria is a disease.[9] Nor does either party dispute that the presence or absence of breast tissue could qualify as a "condition" under the reconstructive surgery provision. This provision therefore permits Aetna to cover breast reconstructive surgeries that correct a lack of breast tissue in a person with Gender Dysphoria, for example, where hormone replacement therapy is unsuccessful.

The court does not suggest that *all* breast surgeries for Gender Dysphoric patients would be covered. The Health Plan specifically excludes from coverage cosmetic procedures for both male and female patients. Breast *augmentation* is explicitly classified as an uncovered cosmetic procedure. And the reconstructive surgery provision carefully notes that "[s]urgery performed primarily for cosmetic or beautifying purposes, as determined by Aetna, is not covered." L-3 9/11/17 App. 383. The court merely holds that the Health Plan/GRS Policy on its face does not categorically deny coverage of all surgical procedures to add breasts in male-to-female transgender patients. The policy allows Aetna the discretion to determine the line between what is a cosmetic and what is a medically necessary breast

---

[9]Baker describes Gender Dysphoria as a "disorder, condition, illness or disease." P. Mot. 1. L-3 does not dispute this characterization.

procedure.[10]

In sum, female-to-male transgender patients may receive coverage to remove breasts (through medically necessary mastectomies), while male-to-female transgender patients may receive coverage to add them (through hormone therapy for breast enhancement, and, where medically necessary, through breast reconstruction).[11] Because the Health Plan/GRS Policy is not discriminatory on its face, the court holds that the Aetna policy itself is not direct evidence of discrimination.

Baker's other arguments are insufficient to avoid summary judgment. She maintains that the GRS Policy is an inherently discriminatory "blanket policy" that denies chest reconstruction to male-to-female transgender persons based on their male gender. The court disagrees. Baker cites *E.E.O.C. v. Premier Operator Servs., Inc.*, 113 F.Supp.2d 1066, 1074 (N.D. Tex. 2000) (Stickney, J.), for the proposition that courts generally disfavor blanket

---

[10]As one example of where this line has been drawn, the court notes that there is authority for the premise that, when a person has already achieved size B-C female breasts through hormone therapy, additional breast augmentation is cosmetic. *See Baker II*, 260 F.Supp.3d at 704 (citing *O'Donnabhain v. Comm'r*, 134 T.C. 34, 73 (2010) (holding that breast augmentation surgery was cosmetic for transgender woman with significant hormone-induced breast development)). In this case, Baker has pointed to no evidence that her breast augmentation was a medically necessary procedure.

[11]L-3 argues that Baker is improperly comparing the treatment of transgender females and males under the Health Plan when she should be comparing the treatment of transgender and biological females. L-3 cites various district court cases in the Fifth Circuit holding that transgender persons are not a protected class *per se* under Title VII. *See Lopez v. River Oaks Imaging & Diagnostic Grp., Inc.*, 542 F.Supp.2d 653, 658 (S.D. Tex. 2008) (collecting cases). But Baker's claim hinges on differential treatment, not of transgender and cisgender persons, but of males and females with Gender Dysphoria. Thus sex, not transgender status, is the relevant characteristic to the Title VII discrimination analysis.

policies. But this case merely applies disparate impact analysis to a facially neutral policy requiring the exclusive use of English in the workplace. *Id.* It makes no finding regarding a blanket policy's tendency to be discriminatory under Title VII.

Baker also refers to cases holding that denial of medical treatment for Gender Dysphoria violates prisoners' Eighth Amendment rights. But Baker offers no reason why the court should extend the logic of these cases to a Title VII discrimination claim.

Because Baker has not designated specific facts that would enable a reasonable trier of fact to find in her favor on her Title VII sex/gender discrimination claim, the court grants L-3's motion for summary judgment and dismisses this claim with prejudice.

\* \* \*

For the reasons stated, the court grants L-3's motion for summary judgment on Baker's claim for Title VII sex/gender discrimination, denies Baker's cross-motion for summary judgment,[12] and enters judgment in favor of L-3 dismissing this action with prejudice.

**SO ORDERED**.

January 26, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[12]Because the court is granting L-3's motion for summary judgment on Baker's Title VII sex/gender discrimination claim, it holds that Baker has not carried her burden to establish beyond peradventure all of the essential elements of her Title VII claim.